MORRILL v. MORRILL.

1. DIVORCE—DESERTION—EVIDENCE.

Testimony tending to show that the wife in a suit for divorce, after some marital troubles during which the parties lived apart, attempted to return to the husband, who moved away to another farm owned by the parties jointly, and they had not thereafter lived together, *held*, to support a decree awarding a divorce to the complainant wife.

2. COMPROMISE AND SETTLEMENT—CONTRACTS—OFFER AND ACCEPTANCE—WITHDRAWAL OF OFFER.

Where the complainant was urged to make a settlement of her property rights for less than they were actually worth, and reluctantly signed an agreement, but was advised by the party who secured her signature that defendant declined to accept it and she at once announced her withdrawal of the offer, it was not accepted before withdrawal and no valid contract was effected, though the writing was presented at the trial, signed by the husband.[1]

3. SAME—ALIMONY—SOLICITOR'S FEES.

An award of alimony, in the form of a farm, jointly owned by husband and wife, to the wife, worth $6,000, and providing that on the payment to her of $437 she should release her interest in the other real estate of defendant, was reasonable, out of property worth about $8,000, defendant being required to pay $120 as temporary alimony and $50 as solicitor's fees.

Appeal from Van Buren; Des Voignes, J. Submitted April 12, 1916. (Docket No. 102.) Decided June 2, 1916.

Bill by Cora M. Morrill against Frank E. Morrill for a divorce. From a decree for complainant, defendant appeals. Affirmed.

[1]As to the effect of divorce on property held jointly by husband and wife, see notes in 30 L. R. A. 333, 10 L. R. A. (N. S.) 463.

*David Anderson,* for complainant.

*Thomas J. Cavanaugh,* for defendant.

MOORE, J. This is a divorce proceeding commenced in January, 1915. The parties have one daughter, who was 24 years old when the case was tried. They were married May 29, 1889. Their married life has not been harmonious. One phase of their troubles reached this court. It is the case of *Morrill* v. *Morrill,* and is reported in 138 Mich. 112 (101 N. W. 209, 110 Am. St. Rep. 306, 4 Am. & Eng. Ann. Cas. 1100). The decision in that case was rendered in November, 1904. December, 1904, the parties went to living together, and in the following spring moved to a farm owned by the wife, situated about one mile from the farm owned by them by the entireties, and lived at this place until the fall of 1907, when Mrs. Morrill and her daughter Elsie took rooms in the village of Lawrence, in order that Elsie might attend the high school without being obliged to travel back and forth. Mr. Morrill made no objection to this arrangement, and visited his wife and daughter frequently, taking the cream from the farm to Lawrence, where the wife made the butter, and supplied her husband with baking. In the spring of 1908, when Mrs. Morrill indicated her intention of returning to their home, Mr. Morrill moved over to the farm owned by the parties jointly. When his wife and daughter returned to the home, the husband had moved, taking many of the household goods. The parties have never lived together since. Each one has continued in a separate abode. September 17, 1910, Mrs. Morrill filed a bill of divorce, charging desertion. An order was made that defendant pay his wife $20 per month for her support during the pendency of the suit, which was then allowed to lie dormant, and the payment of $20 a month was continued until June, 1914, when a paper, to which reference will be made

later, was signed, and Mr. Morrill ceased his monthly payments. On January 30, 1915, the suit filed in 1910 was dismissed, and the bill in this case was filed. Later it was brought to trial, and a decree entered, granting complainant a divorce and settling the property rights of the parties. The case is brought here by appeal. Counsel for appellant say:

"We insist: (1) That the plaintiff is not entitled to a decree dissolving the bonds of matrimony under the testimony in this record; (2) that if she is, then she should be held to be bound by her proposal of settlement and the acceptance; (3) that the award of alimony is not in keeping with the facts developed upon the trial, in this: That the plaintiff gave no assistance in earning any part or portion of the property, but, on the contrary, by reason of vexatious litigation and arbitrary living apart from the defendant, forcing him by order of the court and otherwise to substantially maintain her separate and apart, she depleted his estate."

We will first consider the question of whether the plaintiff is entitled to a decree of divorce. While the testimony is somewhat contradictory, it fairly shows that when the wife and daughter decided, at the close of the school year, to return to the farm where they had lived nearly 3 years, and where the husband was then living, he at once decided to move away, and did so. The complainant testifies that she urged him to return to the farm, and he declined. She then proposed that she and her daughter would go to him, but it is clear that he did not encourage their coming. A neighbor testified that, after she had a talk with complainant, who said she had begged defendant to live with her, she saw and talked with defendant, and that he told her the parties could never live together. In defendant's testimony the following appears:

"Mrs. Morrill pulled up and went to Lawrence and lived there until the next spring. The occasion of that

—her excuse was that Elsie shouldn't drive back and forth or go back and forth on the train. I said, 'All right, go down.' I got along nicely. I did not have a housekeeper. I had nobody. I was baching it. I went back and forth once or twice a week to Lawrence. I had cows at the farm, milked the cows, skimmed the milk, and took the cream down to her. She made a little butter, and I brought some back. We got along seemingly all right when we were separate and apart, only seeing each other occasionally. Well, it came spring, and I kind of looked the situation over and said, 'I will go back, I guess, to the other place.' I was running both places at the same time. I had 115 acres of grapes to look after. At that time there was 65 acres of grapes on the Ihling place. The more I had the poorer I got, so I thought I would simmer down to as small as I could.

"*Q*. Well, did you have any talk with her, or she go to see you, or did you go to see her?   *   *   *

"*A*. Why she would come over and say, 'Well I have a notion to come over and live with you.' I says, 'There is no key to the door.' I said, 'The only way you can lock it is to stay on the inside. There never has been a key to the front door.'

"*Q*. Well, did she say anything at that time about living in the neighborhood?

"*A*. She said she wouldn't live in that neighborhood. But she used to say jokingly, 'I am coming over to live,' but I knew by the tone of voice that she said it in that she didn't mean it. I have been there since that time, keeping my own house, getting my, own meals, looking after myself."

This case was heard in June, 1915. The parties had not lived together since the spring of 1908. The record shows the complainant desired to live with defendant. He moved from where they had lived upon her farm, and failed to provide any place on his farm where she and her daughter could live with him. His testimony gives one the impression that he has no desire to live with her, and that his chief objection to the divorce is the amount of alimony awarded to her.

2. Should complainant be bound by an alleged agreement to settle for her property rights for $4,150? The complainant says she was importuned to make this proposal of settlement, and that she very reluctantly consented to sign it; that she was told by the person who procured her signature that defendant, when it was presented to him, declined to accept it, and that she at once stated that she withdrew her offer. She also stated she never knew defendant had signed the paper until it was presented in court. We do not think it was shown that the offer was accepted before it was withdrawn.

3. Is the award not in keeping with the facts developed upon the trial? We think it is not clear that complainant is wholly responsible for the litigation and trouble between the parties. Defendant, while testifying in referring to the farm owned by the entireties, said:

"Knowing the farm as I do, and operating it these years, $6,000 is a fair market value. I have no objection if the court should conclude in this case that the divorce should be entered to having this property sold and the proceeds divided, or any other arrangement the court might make, except that it is my honest judgment that I do not want it at any greater price than $6,000."

At the conclusion of all the testimony the court inquired of counsel about this farm in case he decided a decree of divorce should be granted:

"Do I understand that the court would be at liberty to set that entire 80 acres over to her at that price on the theory of $6,000, or is the proposition to put it on the market rather than concede that price? Do you understand me? What I want to know is this: Whether the defendant is willing that that property be actually determined by this court at $6,000 whether he takes it or the other party. (Mr. Cavanaugh confers with defendant.)

"*Mr. Cavanaugh:* Yes; they can have the option on it at $6,000 if they want it; they can have it.

"*The Court:* I wanted to know so that I may the better—in looking this matter all over—I may not find my way clear to do that, but should I do so, I wanted to know exactly what that proposition was.

"*Mr. Cavanaugh:* Yes, your honor, they can have it at $6,000, or we will take it at the same price, and we don't care which."

In his decree the circuit judge mentions eight separate parcels of land owned by the defendant with their values, and also finds the value of his personal property and the amount of his debts, and finds him the owner of property of the net value of $7,913. He places the value of the farm owned jointly at the sum of $6,000. He decreed to the complainant the farm owned by the entireties subject to the mortgage, and upon the payment to her of $437.66 she shall release to him her interest in all the rest of the real estate. She was also decreed $120 as temporary alimony and $50 solicitor's fees.

A careful examination of the record satisfies us the decree should be, and it is, affirmed, with costs to complainant.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.